UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TARA RESHAY PATRICK TAYLOR,

                Plaintiff,

-against-

THE CHILDREN'S VILLAGE (JEREMY CHRISTOPHER KOHOMBAN ONLY); A WOMENS PLACE (AMBER GOTTZ),

                Defendants.

**ORDER OF DISMISSAL**

No. 20-CV-10997 (CS)

CATHY SEIBEL, United States District Judge:

    Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendants violated her rights. By order dated February 8, 2021, the Hon. Louis L. Stanton directed Plaintiff to amend her complaint to address deficiencies in her original pleading. Plaintiff filed an amended complaint on February 19, 2021, and the Court has reviewed it. For the reasons set forth below, the Court dismisses the action.

## STANDARD OF REVIEW

    The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

    While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (emphasis in original) (cleaned up). But the "special solicitude" in *pro se* cases, *id*. at 475, has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Plaintiff's amended complaint consists of a confusing combination of the court's employment discrimination complaint form, a letter addressed to Judge Stanton, copies of web pages related to mental health counseling license requirements in New York and Georgia, Plaintiff's graduate school transcripts and resume, copies of emails between Plaintiff and her employer, and the charge of discrimination she filed with the New York State Division of Human Rights.

Using the court's employment discrimination form, Plaintiff checks off boxes to assert claims under Title VII of the Civil Rights Act of 1964 that her employer discriminated against her on the basis of her religion, which she identifies as "Christianity (Spirituality)." (Doc. 7 at

3.)[1] She also checks the boxes to assert claims under the Americans with Disabilities Act of 1990, the Rehabilitation Act of 1973, and the New York State and City Human Rights Laws. Plaintiff describes her disability or perceived disability as "[b]ipolar, schizophrenia, sleeping on duty." (*Id.* at 4.) Plaintiff also checks the box to assert "other" claims, which she describes as, "Domestic violence victim[,] Protected class[,] Family status[,] Protected class[,] unlawful retaliation." (*Id.*)

Plaintiff alleges that she "was misdiagnosed with a severe mental illness back in 2009 to cover up for domestic violence that was later corrected." (*Id.* at 48.) But the last mental health assessment she completed showed that there "were not any mental illnesses present but a lot of abuse (Trauma)." (*Id.*)

Plaintiff writes:

> It was brought to my attention back in 2012 that there was video footage floating around with me using profanity towards an individual that I know as well as video footage in regards of me speaking in regards of me having a mental disorder and others having a physical disorder. I was also told that some others have documentation that I have a physical disorder which they refuse to turn any of the documentation or the video footage to me which could be contributing to the fact that mental health therapists in New York or elsewhere do not want to provide me with Clinical Supervision.

(*Id.* at 48.)

Plaintiff suggests that she was discriminated against, in part, because unnamed individuals "produced footage [and] pictures [from] outside" her job at Children's Village that were of an "explicit nature." (*Id.*)

The amended complaint also includes vague allegations of human trafficking, sex trafficking, and domestic violence. For example, Plaintiff alleges that her "under employment,

---

[1] Citations to page numbers in Doc. 7 refer to the page numbers generated by the Court's Electronic Filing System.

layoffs, and wrongful terminations is [a] clear indication that [she is] a high target for human trafficking, sex trafficking, as well as domestic violence." (*Id.* at 50.) She writes, "The sex trafficking is related to my employment since youth make untrue comments regarding me having poor hygiene. Also, when a youth pulled my wig off in Williams Cottage making comments about me during my sex trafficking days." (*Id.* at 52.)

Plaintiff further alleges that she was discriminated against based on her having anemia. Plaintiff sought an accommodation for her anemia so that she would "not be idle at any time or appear to be sleeping." (*Id.* at 48.) In 2019 and early 2020, Plaintiff received several "Counseling Summar[ies]," which appear to be written reprimands, due to allegedly leaving youth unsupervised, allowing two youth to "go AWOL" during a facility picnic, and for demonstrating "poor judgment." On April 7, 2020, Plaintiff was informed via telephone that her employment was being terminated, and a follow-up letter stated that her employment was terminated for "sleeping on duty twice, failing to account for my whereabouts, and ongoing issues." (*Id.* at 52.)

Plaintiff's sole allegation relating to religious discrimination is that she was retaliated against, harassed, and intimidated because she "would not indulge in certain activities outside of work." (*Id.* at 3.)

Plaintiff attaches a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), which is dated September 29, 2020. (*Id.* at 46.)

Plaintiff seeks money damages and a wide array of injunctive relief.

## DISCUSSION

### A.  Pleading Standards

Plaintiff asserts claims that her employer discriminated against her in violation of the ADA and Title VII. "The ADA prohibits discrimination against a 'qualified individual on the

4

basis of disability' in the 'terms, conditions, and privileges of employment.'" *Kinneary v. City of N.Y.*, 601 F.3d 151, 155 (2d Cir. 2010) (quoting 42 U.S.C. § 12112(a)). A person is disabled under the ADA if the person has "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or is "regarded as having such an impairment."[2] 42 U.S.C. § 12102(1)(A)-(C).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).

These antidiscrimination provisions prohibit employers from mistreating an individual because of the individual's protected characteristics, *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007), or retaliating against an employee who has opposed any practice made unlawful by those statutes, *see Crawford v. Metro. Gov't*, 555 U.S. 271, 276 (2009) (holding that conduct is protected when it "confront[s]," "resist[s]," or "withstand[s]" unlawful actions). Mistreatment at work that occurs for a reason other than an employee's protected characteristic or opposition to unlawful conduct is not actionable under these federal antidiscrimination statutes. *See Chukwuka v. City of New York*, 513 F. App'x 34, 36 (2d Cir. 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

---

[2] An individual meets this third requirement "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

5

At the pleading stage in an employment discrimination action, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). A plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id*.

**B.     Religious Discrimination Claims**

Plaintiff has failed to allege any facts suggesting that her employer took any adverse action against her because of her religion. Plaintiff's sole allegation regarding her religion is that she was "retaliated against, discriminated against, [h]ar[]assed, and intimidated because [she] would not indulge in certain activities outside of work." (Doc. 7 at 3.) But such vague allegations are insufficient to state a claim under Title VII. Plaintiff fails to describe the nature of the "activities outside of work," and she alleges no facts suggesting that she was treated differently because of her religion or that her religion as in any way related to her termination. The Court therefore dismisses Plaintiff's claims under Title VII of religious discrimination for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     ADA and Rehabilitation Act Claims[3]**

Plaintiff's allegations suggest that she is asserting that her employer discriminated against her because she has anemia and because she has or is perceived to have bipolar disorder, schizophrenia, and possibly other mental health conditions.

---

[3] Because the standards under the ADA and the Rehabilitation Act "are generally the same and the subtle distinctions between the statutes are not implicated in this case, '[the Court will] treat claims under the two statutes identically'" for the purposes of this order, except where otherwise noted. *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

Plaintiff fails to allege facts suggesting that her anemia is a disability as defined by the ADA. A person is disabled under the ADA if that person has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Such activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communication and working," as well as "the operation of a major bodily function." 42 U.S.C. § 12102(2). Plaintiff appears to suggest that her anemia may cause her to "appear to be sleeping," but she does not allege facts suggesting that it substantially limits a major life activity.

Even if Plaintiff's anemia could qualify as a disability under the ADA, her claim that her employer failed to accommodate her anemia would fail for other reasons. Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(5)(A). An individual is qualified for a job if she is able to perform the essential functions of that job, either with or without reasonable accommodation. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137-38 (2d Cir. 1995). The essential functions of a job are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). And while neither the ADA nor the Rehabilitation Act includes a "closed-end definition" of what constitutes a "reasonable accommodation," *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995), a plaintiff must at least identify the nature of the accommodation that she sought, *see Borkowski*, 63 F.3d at 139 ("On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits."); *see also Dass v. City Univ. of N.Y.*, No. 18-CV-11325, 2020 WL 1922689, at *8

(S.D.N.Y. Apr. 21, 2020) (holding plaintiff "failed to adequately allege that she requested a reasonable accommodation" where she "did not describe the reasons why she made [the] request or the content of her request").[4]

Plaintiff alleges that the "accommodations department" was "made aware" of her anemia diagnosis, and that she "also requested accommodations and applied to other positions so that [she] will not be idle at any time or appear to be sleeping." (Doc. 7 at 48.) But Plaintiff does not specify the nature of the accommodation she requested or allege any facts that would allow the Court to evaluate the reasonableness of her request or whether she is able to perform the essential functions of the position, either with or without the accommodation.

Plaintiff's allegations that she was discriminated against because of mental health issues, either real or perceived, fare no better. Plaintiff alleges that she has been diagnosed with bipolar disorder and schizophrenia, cryptically describes past events and the existence of pictures or video footage, and states that she is no longer mentally ill. Even assuming that Plaintiff's mental health issues meet the definition of a disability under the ADA, Plaintiff alleges no facts suggesting that her employer terminated her employment or otherwise took any adverse action against her because of her mental health. Indeed, Plaintiff's allegations suggest she was terminated for among other things, leaving youth unattended and allowing them to leave the facility. (*See, e.g.*, Doc. 7 at 32.) The Court therefore dismisses Plaintiff's claims under the ADA and the Rehabilitation Act for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      Crime Victim Status**

Plaintiff suggests throughout the amended complaint that her employer discriminated against her based on her status as a victim of domestic violence or human trafficking. But being

---

[4] The Court will send to Plaintiff copies of all unpublished decisions cited in this Order.

a survivor of domestic violence or human trafficking is not a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex or national origin."); *Johnson v. All Metro Home Care Servs.*, No. 19-CV-1190, 2019 WL 5799598, at *4 (N.D.N.Y. Nov. 7, 2019) (holding that being a survivor of domestic violence does not make plaintiff a member of a protected class under Title VII), *report and recommendation adopted*, 2019 WL 6527949 (N.D.N.Y. Dec. 4, 2019). In any event, Plaintiff fails to allege any facts suggesting that her employer took any adverse employment action against her because of her status as a victim of domestic violence or human trafficking.

Finally, Plaintiff also invokes the "Trafficking Victims Act." (Doc. 7 at 50.) The Trafficking Victims Protection Act ("TVPA"), enacted in 2000, was amended by the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 595, to create a civil cause of action for victims of violation of the statute's criminal provisions. *See Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012). The TVPRA makes it a criminal offense to obtain labor through force, to knowingly benefit from a venture engaged in forced labor, and to knowingly recruit or obtain forced labor. 18 U.S.C. §§ 1589, 1590. "Forced labor," as defined by the statute, includes coercion through abuse or threatened abuse of the law or legal process, or threats of serious financial or reputational harm, such that "a reasonable person of the same background and in the same circumstances" as the victim would be coerced "to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589. "Trafficking," under the statute, includes the knowing recruitment of any person for forced labor. 18 U.S.C. § 1590(a).

9

*See Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 92-93 (2d Cir. 2019); *United States v. Sabhnani*, 599 F.3d 215, 231 n.4 (2d Cir. 2010).

An individual who is a victim of forced labor or human trafficking may bring a civil action against those who (1) knowingly benefited or received anything of value, (2) through participation in a venture, (3) "which [the beneficiary] knew or should have known has engaged in an act in violation of [§ 1589 or § 1590]." 18 U.S.C. § 1595(a).

The amended complaint includes numerous statements regarding alleged human trafficking and sex trafficking.[5] But Plaintiff fails to allege any facts suggesting that her former employer subjected her to "forced labor" in violation of the TVPRA.

### E.  Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims over which the Court has original jurisdiction, and having considered the factors set forth in *Cohill*, *see id.* at 350 ("judicial economy, convenience, fairness, and comity"), the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by

---

[5] For example, Plaintiff asserts that her termination "is clear evidence of human trafficking due to abusers as well as former employers not wanting to validate my work experience so that I can become a Licensed Mental Health Clinician in the State of New York," and her "under employment, layoffs, and wrongful terminations is [a] clear indication that I am a high target for human trafficking, sex trafficking, as well as domestic violence." (Doc. 7 at 50.)

10

enumerating the circumstances in which district courts can refuse its exercise.'") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**F.     Leave to Amend**

Finally, I consider whether Plaintiff should be granted leave to amend, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "It is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint once, having the benefit of the observations in Judge Stanton's February 8 order.  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance*

11

*Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend again or suggested she is in possession of facts that would cure the defects in her claims. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).

For these reasons, I decline to grant leave to amend *sua sponte*.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket.

Plaintiff's amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's motion to compel, (Doc. 11), is denied as moot, and the Clerk shall terminate that motion.

The Court declines to exercise supplemental jurisdiction over any state-law claims Plaintiff may be asserting. 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: April 21, 2021
       White Plains, New York

*Cathy Seibel*

CATHY SEIBEL
United States District Judge